No. 25-1128

IN THE

# United States Court of Appeals
## for the Fourth Circuit

PUBLIC INTEREST LEGAL FOUNDATION

*Plaintiff-Appellee*

v.

HOWARD M. KNAPP,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of South Carolina, Case No. 3:24-cv-1276-JFA.
The Honorable Joseph F. Anderson, Jr., Presiding.

## BRIEF OF PLAINTIFF-APPELLEE

J. Christian Adams
Noel H. Johnson
PUBLIC INTEREST LEGAL FOUNDATION, INC.
107 S. West Street, Suite 700
Alexandria, VA 22314
(703) 745-5870

May 5, 2025                    *Counsel for Plaintiff-Appellee*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1128__     Caption: __Public Interest Legal Foundation, Inc. v. Knapp__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Public Interest Legal Foundation, Inc.__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.     Does party/amicus have any parent corporations?    ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
    If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Noel H. Johnson          Date:          5/5/2025

Counsel for: Appellee Public Interest Legal Fnd.

Print to PDF for Filing

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF THE CASE.............................................................. 3

    *Introduction* ..................................................................................... 3

    *Summary of Legal Background*.......................................................... 4

    *Summary of Factual Background* ....................................................... 5

    *Procedural History*........................................................................... 9

SUMMARY OF THE ARGUMENT.................................................. 10

STANDARD OF REVIEW ............................................................... 12

ARGUMENT.................................................................................... 12

    I.     Introduction.......................................................................... 12

    II.    The District Court Correctly Held that the Voter List Is a
           Record Subject to Disclosure under the NVRA ............................ 14

        A. The Output and End-Product of Voter List Maintenance
            Activities "Concern[s]" the "Implementation" of Those
            Activities ......................................................................... 14

        B. The SEC's Tortured Interpretation Is Contrary to NVRA's
            Text and Intent and Produces Absurd Results ......................... 17

    III.   The District Court Correctly Held that the NVRA Preempts
           the Registered Voter Requirement................................................... 21

        A. Preemption Is Analyzed Under the Elections Clause.............. 21

B.  The Registered Voter Requirement Is Preempted Because It Prevents the Transparency the NVRA Requires .................... 23

IV.  The Foundation Has Standing ............................................................ 28

A. The Informational Injury Doctrine Applies ................................ 29

B.  *Laufer* Rejects the Need for "Downstream Consequences" in Cases Alleging Denial of Records ............................................ 31

C. In Any Event, the Foundation Has Been Deprived of Information and Suffered Downstream Consequences Contrary to the Intent of Congress ................................................ 33

D. The SEC's Proxy Approach to Federal Rights is Repugnant to the Values of a Free Nation ........................................................ 35

CONCLUSION ............................................................................................ 36

CERTIFICATE OF COMPLIANCE .............................................................. 38

CERTIFICATE OF SERVICE ........................................................................ 39

ii

# <u>TABLE OF AUTHORITIES</u>

### Cases

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) ............................................................................. 13, 21-23, 26

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
  178 F.3d 350 (5th Cir. 1999) .......................................................................... 36

*Consumer Elecs. Ass'n v. FCC*,
  347 F.3d 291 (D.C. Cir. 2003) ....................................................................... 21

*Ex parte Siebold*,
  100 U.S. 371 (1880) ...................................................................................... 24

*FEC v. Akins*,
  524 U.S. 11 (1998) ........................................... 28, 30-31, 31 n.10, 32, 32 n.11,

*Fusaro v. Howard*,
  19 F.4th 357 (4th Cir. 2021) .......................................................................... 12

*Gross v. FBL Fin. Servs.*,
  557 U.S. 167 (2009) ....................................................................................... 17

*Husted v. Philip Randolf Inst.*,
  584 U.S. 756 (2018) .................................................................................27 n.8

*Jud. Watch, Inc. v. King*,
  993 F. Supp. 2d 919 (S.D. Ind. 2012) ....................................................31 n.10

*Jud. Watch, Inc. v. Lamone*,
  399 F. Supp. 3d 425 (D. Md. 2019) ..........................................17, 25, 36 n.13

*Laufer v. Naranda Hotels, LLC*,
  60 F.4th 156 (4th Cir. 2023)...........................13-14, 28, 28 n.9, 31-32, 32 n.11

*Laufer v. Naranda Hotels, LLC,*
  No. 20-2348 (4th Cir. July 26, 2023)..........................................................28 n.9

*Newman v. Piggie Park Enterprises, Inc.,*
  390 U.S. 400 (1968)..................................................................................... 35

*Newman v. Piggie Park Enterprises, Inc.,*
  377 F.2d 433 (4th Cir. 1967) ....................................................................... 35

*Oneok, Inc. v. Learjet, Inc.,*
  575 U.S. 373 (2015)...................................................................................... 27

*Project Vote/Voting for Am., Inc. v. Long,*
  752 F. Supp. 2d 697 (E.D. Va. 2010) ................................................15-16, 30

*Project Vote/Voting for Am., Inc. v. Long,*
  813 F. Supp. 2d 738 (E.D. Va. 2011) .............................................4, 16 n.6, 23

*Project Vote/Voting for Am., Inc. v. Long,*
  682 F.3d 331 (4th Cir. 2012).... 3-4, 10, 12, 15, 16 n.6 18, 20-21, 23-24, 26-27

*Public Citizen v. United States Department of Justice,*
  491 U.S. 440 (1989)...............................................................13, 28-33, 32 n.11

*Pub. Interest Legal Found., Inc. v. Bellows,*
  92 F.4th 36 (1st Cir. 2024) ..................................................................... 17, 22

*Pub. Interest Legal Found., Inc. v. Bennett,*
  2019 U.S. Dist. LEXIS 39723 (S.D. Tex., Feb. 6, 2019) ........................31 n.10

*Pub. Interest Legal Found., Inc. v. Bennett,*
  2019 U.S. Dist. LEXIS 38686 (S.D. Tex., Mar. 11, 2019) .....................31 n.10

*Pub. Interest Legal Found., Inc. v. Matthews,*
  589 F. Supp. 3d 932 (C.D. Ill. 2022) ............................................................ 22

*Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections,*
  996 F.3d 257 (4th Cir. 2021) ...................................................................11-12

*Smiley v. Holm,*
     285 U.S. 355 (1932) ........................................................... 22

*TransUnion LLC v. Ramirez,*
     594 U.S. 413 (2021) ............................................ 13, 28, 32

*True the Vote v. Hosemann,*
     43 F. Supp. 3d 693 (S.D. Miss. 2014) ........................... 22

*Voting for Am., Inc. v. Steen,*
     732 F.3d 382 (5th Cir. 2013) ....................................... 22

*Whole Woman's Health v. Jackson,*
     595 U.S. 30 (2021) ..................................................... 10 n.5

## Declaration, Constitutions, Statutes, Regulations, and Rules

U.S. Const. Art. I, § 4, cl. 1 ...................................... *passim*

28 U.S.C. § 1291 ........................................................... 1

28 U.S.C. § 1331 ........................................................... 1

52 U.S.C. § 20501(b)(3) ............................................. 24

52 U.S.C. § 20501(b)(4) ............................................. 24

52 U.S.C. § 20507(i)(1) ........................................ *passim*

52 U.S.C. § 20510(b) .................................................... 1

52 U.S.C. § 20901 ........................................................ 6

S.C. Code Ann. § 7-3-20(D)(13) ............................... 7-8

S.C. Code Ann. § 7-5-125 ......................................... 19

S.C. Code Ann. § 7-5-186 ........................................... 7

*Other Authorities*

"Concern," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/concerns?src=search-dict-hed ............................... 15

## <u>STATEMENT OF JURISDICTION</u>

Plaintiff-Appellee Public Interest Legal Foundation, Inc., brought a one-count complaint alleging a violation of Section (8)(i) of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507(i)(1). (JA008.)[1]

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, because the action arose under the laws of the United States, and 52 U.S.C. § 20510(b), because the action sought declaratory and injunctive relief under the NVRA.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.[2]

---

[1] District Court docket numbers are preceded by "ECF."

[2] Appendix citations are preceded by "JA."

1

## <u>STATEMENT OF ISSUES</u>

1.      Did the District Court correctly hold that South Carolina's official list of eligible voters ("Voter List") is a record subject to disclosure under the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1)?

2.      Did the District Court correctly hold that the NVRA preempts South Carolina's law restricting disclosure of the Voter List to South Carolina registered voters?

## STATEMENT OF THE CASE

### *Introduction*

This case asks whether South Carolina's Voter List[3] is a record subject to public disclosure under the NVRA. The NVRA's scope is well-settled in this Circuit. *See, e.g., Project Vote/Voting for Am., Inc. v. Long,* 682 F.3d 331 (4th Cir. 2012) ("*Project Vote*"). Consistent with controlling precedent, and like all other courts confronting the issue, the District Court answered that question "yes."

This case also asks whether South Carolina may nullify an act of Congress by restricting disclosure of the Voter List to the state's registered voters. This too was an easy call for the District Court because when Congress acts pursuant to the Elections Clause, it necessarily overrides state legislative choices. South Carolina's laws do not get a pass from this basic Constitutional architecture.

---

[3] The District Court referred to the Voter List as the Statewide Voter Registration List or the SVRL.

3

*Summary of Legal Background*

NVRA Section 8(i)—the Public Disclosure Provision—provides, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1). The only exempt records are those that "relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." *Id*. Courts universally agree that state voter rolls are subject to disclosure under the NVRA's Public Disclosure Provision. (*See* JA010.) With limited exceptions, courts overwhelmingly agree that the NVRA preempts state-law restrictions that impede the NVRA's objectives. *See, e.g., Project Vote/Voting for Am., Inc. v. Long*, 813 F. Supp. 2d 738, 743 (E.D. Va. 2011), *affirmed by Project Vote*, 682 F.3d 331 (4th Cir. 2012).

4

*Summary of Factual Background*

The relevant facts, stated succinctly, are the following:[4]

1.    The Foundation is a non-profit, non-partisan, 501(c)(3) organization that specializes in election and voting rights issues. (JA009 ¶ 3.)

2.    For its work, the Foundation relies heavily upon the NVRA's Public Disclosure Provision. (*Id*.)

3.    Among other programming, the Foundation uses records compiled through the NVRA to analyze the programs and activities of state and local election officials to determine whether lawful efforts are being made to keep voter rolls current and accurate, and to determine whether eligible registrants have been improperly removed from voter rolls. (JA009 ¶ 3, JA014 ¶ 27.)

---

[4] The District Court found that "all facts necessary to the disposition of this action have been stipulated too or are otherwise uncontested." (JA095.) The SEC does not contest that finding.

4.     The Foundation also educates the public and government officials about its findings. (JA009 ¶ 3.)

5.     The Foundation also offers policy advice (*i.e.*, solutions) to government officials regarding state compliance with voting rights legislation like the NVRA. (JA015 ¶ 33.)

6.     The Foundation plans to use the Voter List to engage in its regular, programmatic activities. (E.g., JA014 ¶ 29.)

7.     South Carolina requires voter registration and currently conducts numerous activities designed to keep its Voter List current and accurate. (JA014 ¶ 28, JA032 ¶ 28, JA053 ¶¶ 14-15.)

8.     Pursuant to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901, *et seq.*, the South Carolina Election Commission ("SEC") maintains a single, uniform, official, centralized interactive computerized statewide voter registration system. (JA050 ¶ 6.)

9.     The system described in paragraph 8 serves as the single system for storing and managing the Voter List, *i.e.*, the official list of registered voters in South Carolina. (JA050 ¶ 5, JA051 ¶ 7.)

10.     The Voter List is the official voter registration list for the conduct of all elections in the State of South Carolina. (JA051 ¶ 8.)

11.     State and local election officials refer to the system described in paragraph 8 as VREMS, which stands for Voter Registration and Election Maintenance System. (JA050 ¶ 6.)

12.     Election officials use VREMS to maintain South Carolina's voter registration records, including adding, changing, and canceling voter registration records. (*See* JA051 ¶ 6, JA052 ¶ 12, JA053 ¶ 13); *see also* S.C. Code Ann. § 7-5-186 ("The executive director must conduct an annual general registration list maintenance program to maintain accurate voter registration records in the statewide voter registration system.").

13.     South Carolina registered voters—and only South Carolina registered voters—may purchase a copy of the Voter List. (JA051 ¶ 9); S.C.

Code Ann. § 7-3-20(D)(13); *see also* [https://scvotes.gov/resources/sale-of-voter-registration-lists/](https://scvotes.gov/resources/sale-of-voter-registration-lists/) ("You must be a registered South Carolina voter to purchase a list[.]").

14.     The Voter List contains the following information for each registered voter in South Carolina: name, address, race, gender, date of birth, voter registration number, date registered, county, precinct, voting district, and voter participation history (past two statewide primaries and general elections). (JA053 ¶ 16.)

15.     On or around February 5, 2024, pursuant to the NVRA's Public Disclosure Provision, the Foundation requested the opportunity to inspect or receive a copy of the Voter List. (JA049 ¶ 1.)

16.     The SEC denied the Foundation's request, citing S.C. Code Ann. § 7-3-20(D)(13) as the basis for the denial (hereafter, "Registered Voter Requirement").

17.     On February 14, 2024, the Foundation notified Appellant Executive Director Howard Knapp ("Executive Director Knapp") that he

8

and the SEC are in violation of the NVRA for failure to permit inspection and reproduction of the Voter List as required by 52 U.S.C. § 20507(i)(1). (JA050 ¶ 3.)

18.    Thereafter, the SEC affirmed its denial in writing. (JA050 ¶ 4.)

19.    The Foundation is unable to engage in its regular, programmatic activities due to the SEC's denial of the Foundation's request for the Voter List. (*See* JA014-15 ¶¶ 27-35.)

20.    The Foundation satisfied the NVRA's statutory waiting period before filing this action. (*See* JA013 ¶ 24.)

### *Procedural History*

The Foundation filed this action on March 14, 2024. (JA008.) The parties cross-moved for summary judgment and, on September 18, 2024, the District Court granted the Foundation's motion and denied the SEC's motion. (JA098, JA110.) The SEC then moved for reconsideration of the summary judgment order, which the District Court denied on January 7, 2025. (JA111.) The SEC seeks review of those orders in this Court.

## SUMMARY OF THE ARGUMENT

The SEC's position cannot coexist with centuries of well-settled Supremacy Clause and Elections Clause jurisprudence or a decade of the Fourth Circuit's NVRA holdings. The SEC pushes a modern version of nullification,[5] where South Carolina may create exceptions to federal law. The exception in question here harms voting rights, extinguishes election transparency, and nullifies an act of Congress passed pursuant to the Elections Clause. It cannot stand.

In *Project Vote v. Long*, this Circuit held that the Public Disclosure Provision's text has "expansive meaning" and a scope of "great breadth." 682 F.3d at 336 (citations and quotations omitted). This Circuit reaffirmed

---

[5] *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 71 (2021) (Thomas, J., concurring in part and dissenting in part) ("This is a brazen challenge to our federal structure. It echoes the philosophy of John C. Calhoun, a virulent defender of the slaveholding South who insisted that States had the right to 'veto' or 'nullif[y]' any federal law with which they disagreed.") (quoting Address of J. Calhoun, Speeches of John C. Calhoun 17-43 (1843)).

its view in *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996

F.3d 257 (4th Cir. 2021) ("*NCSBE*"). Unconvinced, the SEC demands to hear

this story's ending for a third time. So be it.

     While the NVRA encompasses an indefinite number of records, the

accuracy of the end product—the Voter List—was Congress's ultimate

concern, because the Voter List determines who can and cannot vote.

"How then," as the District Court rhetorically mused, "can a report which

identifies the most updated list of eligible South Carolina voters not be a

record concerning the efforts made to ensure an accurate and current list of

voters?" (JA101-102.) It cannot.

11

## STANDARD OF REVIEW

This Court "review[s] de novo a district court's disposition of cross-motions for summary judgment." *Fusaro v. Howard*, 19 F.4th 357, 366 (4th Cir. 2021).

## ARGUMENT

### I.    Introduction.

Thirty years ago, Congress decided that decisions about who is and is not eligible to vote should be transparent and publicly accessible, so that voting rights are not lost to errors and inefficiencies, or worse, discrimination. The NVRA's scope is well-settled in this Court, which has twice interpreted the Public Disclosure Provision to mean what it says: "all records" concerning voter list maintenance are public records. *Project Vote*, 682 F.3d 331; *NCSBE*, 996 F.3d 257. Those prior decisions control this appeal and, as the District Court prudently observed, they "leave[] little, if any, doubt that the NVRA applies equally to the records sought here." (JA102-103.)

12

The District Court's decision should be affirmed because it was compelled by the NVRA's plain language and comports with Congress's intent. In simplest terms, the Voter File is the output or end-product of all of South Carolina's voter list maintenance activities. The Voter File thus squarely "concern[s]" the "implementation" of those activities in every sense of the word. 52 U.S.C. § 20507(i)(1).

The preemption question is also not a close call. The Registered Voter Requirement explicitly prevents the *public* inspection the NVRA requires. It is not just an obstacle to Congress's objectives; it nullifies the statute's operation. It is well-settled that laws posing such conflicts with the NVRA are invalid under the Constitution's Elections Clause. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ("*ITCA*").

The SEC's standing arguments are meritless. This Circuit has already addressed the narrow impact of *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) and found that "the *TransUnion* Court distinguished *Public Citizen* and *Akins* without questioning their validity." *Laufer v. Naranda Hotels, LLC*,

13

60 F.4th 156, 170 (4th Cir. 2023). In any event, the Foundation has

demonstrated an informational injury and concomitant adverse effects—

namely, the inability to evaluate and scrutinize the SEC's voter list

maintenance activities and the inability to educate and advise the public

and government officials. Congress sought to promote precisely these

types of activities when it passed the NVRA's Public Disclosure Provision.

A law that prohibits them causes actionable injury.

## II.    The District Court Correctly Held that the Voter List Is a Record Subject to Disclosure under the NVRA.

### A. The Output and End-Product of Voter List Maintenance Activities "Concern[s]" the "Implementation" of Those Activities.

The SEC concedes that it conducts voter list maintenance programs

and activities (JA014 ¶ 28, JA032 ¶ 28, JA053 ¶¶ 14-15), and that "the

[Voter] [L]ist is the output of the required programs and activities." (SEC

Br. at 4; *see also id*. at 33 ("The court correctly recognized that the voter list

'is properly classified as an output of all other records or reports which the

[Commission] utilizes to add or remove voters[…].'") (quoting JA102).)

14

The SEC's concessions make the Court's job even easier because the only remaining question is whether the "output" or end-product of the SEC's activities "concern[s]" the "implementation" of those activities. Of course, it does. The District Court even saw the connection as "axiomatic" (JA101), and a "clear conclusion" (JA104). It is so because the NVRA's text compels that conclusion. *See Project Vote*, 682 F.3d at 335 ("The starting point for any issue of statutory interpretation is of course the language of the statute itself.").

The word "implementation" as used in the NVRA means the act of "carrying out" a list maintenance activity. *Project Vote*, 682 F.3d at 336; *see also Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 707 (E.D. Va. 2010) ("The term 'implementation' means the act of 'carry[ing] out' or 'accomplish[ing]' or 'giv[ing] practical effect to and ensur[ing] … actual fulfillment by concrete measures.'"). The common and ordinary meaning of the word "concern" is "to relate to." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/concerns?src=search-dict-

15

hed (last accessed April 18, 2025). Accordingly, records which relate to carrying out or accomplishing voter list maintenance activities are subject to the Public Disclosure Provision's requirements. *See Project Vote*, 752 F. Supp. 2d at 707.[6]

The Voter List relates to the SEC's carrying out of *all* voter list maintenance activities—including additions, changes, and cancelations. (*See, e.g.*, JA059 ¶ 12.) In other words, at the time it is generated the Voter List reflects and contains each registrant's "most recent" information, that which is accurate and current. *Project Vote*, 752 F. Supp. 2d at 706. Accordingly, the Voter List "represents the end-product of the State's list maintenance activities." (JA102.) The Voter List thus "concerns those maintenance activities." (*Id*.) There is no credible argument to the contrary.[7]

---

[6] *Summary judgment granted by Project Vote/Voting for Am., Inc. v. Long*, 813 F. Supp. 2d 738 (E.D. Va. 2011), *in turn affirmed by Project Vote*, 682 F.3d 331 (4th Cir. 2012).

[7] Whether the SEC "uses" the Voter File to ensure accuracy and currency is not relevant, much less dispositive. (*See* JA101; SEC Br. at 8.) The word

In fact, the universal "weight of authority surrounding the NVRA supports [the District Court's] conclusion." (JA102.) The First Circuit in *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) reached the same conclusion. (*See* JA102-03.) As did *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) and a "litany" of other district courts (*see* JA104 n.8 (collecting cases)). In the jurisprudential sea, the SEC is rowing a boat with no oars.

### B. The SEC's Tortured Interpretation Is Contrary to NVRA's Text and Intent and Produces Absurd Results.

The SEC contends that the word "implementation" limits the NVRA's reach to records "about the steps … taken by a state … to ensure that the voter list is accurate." (SEC Br. at 37-38.) Not so. For starters, the SEC cannot rewrite a statute's text because it does not like the words

---

"use" is not found in the Public Disclosure Provision's text. As the District Court recognized, what the NVRA actually encompasses is much broader: "all records 'concerning' efforts made to maintain an accurate and current list of eligible voters." (JA101.) The District Court correctly declined to insert words in the NVRA that Congress never used.

17

Congress used. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") (citations and quotations omitted).

Furthermore, *Project Vote* forecloses the SEC's interpretation. *Project Vote* held that the Public Disclosure Provision's text "unmistakably encompasses completed voter registration applications." *Project Vote*, 682 F.3d at 336. Yet completed voter registration applications say nothing about any steps taken to ensure an accurate voter list. An application is just a piece of paper containing applicant data. Yet completed applications are nevertheless within the NVRA's scope because they "concern[]" a list maintenance activity—namely, officials' review of the applicants' information and the registration of qualified applicants. *See Project Vote*, 682 F.3d at 335 ("Under Virginia law, election officials must examine completed voter registration applications and register applicants that possess the necessary qualifications.").

18

The Voter List "concern[s]" the implementation of the same activity examined in *Project Vote*, among many others. (*See* JA103-104.) Like Virginia law, South Carolina law provides that election officials must register all persons who apply and possess the necessary qualifications. *See* S.C. Code Ann. § 7-5-125. Officials review applications and enter qualified applicants' data into VREMS, which then generates a compilation of that data in the form of the Voter List. In other words, Voter List data is derived from completed registration applications. The District Court nicely tied this all together: "[T]he activity of inputting voter registration information into the VREMS is conducted to ensure that South Carolina is keeping an accurate and current account of its official lists of eligible voters as those citizens register to vote." (JA104.)

Registrant data does not appear on the Voter List by magic. It is there because the SEC *implemented* required voter list maintenance activities, the most basic of which is processing the applications evaluated in *Project Vote*.

19

The Voter List concerns the "implementation" of those activities in every sense of the word.

Simply put, the SEC's interpretation cannot coexist with this Court's well-settled view that the NVRA's reach is expansive. *See Project Vote*, 682 F.3d at 336 ("the use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth."). In addition to registration applications, numerous other critical records would be kept secret under the SEC's interpretation, including records establishing death and change in residency—the very documents that may result in disenfranchisement. A statute expressly designed to promote the integrity of the electoral process and accurate voter information does not tolerate such an absurd result.

The SEC fundamentally takes issue with the NVRA's breadth. Yet Congress already decided that issue in 1993. There is nothing inherently suspect about a broadly written statute. In fact, "the Supreme Court has consistently instructed that statutes written in broad, sweeping language

20

should be given broad, sweeping application." *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 298 (D.C. Cir. 2003) (citation omitted). The NVRA is no exception. The NVRA's broad reach evinces Congress's belief that voting rights "must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote*, 682 F.3d at 335. The SEC's position risks the very ills Congress was trying to prevent.

III. **The District Court Correctly Held that the NVRA Preempts the Registered Voter Requirement.**

A. **Preemption Is Analyzed Under the Elections Clause.**

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ("*ITCA*") controls the preemption question and compels affirmance. For starters, *ITCA* and other Supreme Court precedent leave no room for the SEC's argument that the NVRA's Public Disclosure Provision is not an exercise of Congress's Elections Clause authority. (SEC Br. at 47-48.)

With the Elections Clause, the Founders gave Congress the "authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of

21

voting, protection of voters, prevention of fraud and corrupt practices,

counting of votes, duties of inspectors and canvassers, and making and

publication of election returns[.]" *Smiley v. Holm*, 285 U.S. 355, 366 (1932);

*see also ITCA*, 570 U.S. at 8-9 (explaining that Elections Clause authority

includes "registration" laws). A "complete code" for voter "registration,"

"protection of voters," and the "prevention of fraud and corrupt practices"

necessarily includes a basic oversight mechanism like Section 8(i), which is

designed to ensure the process is working lawfully and effectively.

Accordingly, courts considering the Public Disclosure Provision's

preemptive effect after *ITCA* have done so under the Elections Clause. *See,

e.g.*, *Bellows*, 92 F.4th at 51-52; *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 399-

400 (5th Cir. 2013); *Pub. Interest Legal Found. v. Matthews*, 589 F. Supp. 3d

932, 939-40 (C.D. Ill. 2022); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693,

730 (S.D. Miss. 2014) ("Because Congress's power to enact the NVRA

derives from the Elections Clause … preemption analysis in this case is

governed by that clause, not the Constitution's Supremacy Clause[.]")
(internal citations and quotations omitted).

While the Eastern District of Virginia invoked the Supremacy Clause
in *Project Vote*, it did so before *ITCA*. Regardless, *Project Vote* supports the
Foundation because even under the Supremacy Clause, the court
concluded that the NVRA preempts any Virginia law that "forecloses
disclosure" of a covered record. *Project Vote*, 813 F. Supp. 2d at 743, *affirmed
by Project Vote*, 682 F.3d 331 (4th Cir. 2012). The Registered Voter
Requirement meets the same fate under the Supremacy Clause because it
likewise "forecloses disclosure" of a covered record.

## B. The Registered Voter Requirement Is Preempted Because It Prevents the Transparency the NVRA Requires.

Because Elections Clause legislation must be read to "mean what it
says," *ITCA*, 570 U.S. at 15, this Court need not look past the text's
command to find frustration of Congress's intent. The NVRA's text
requires "public" inspection. 52 U.S.C. § 20507(i)(1). South Carolina law
prohibits "public" inspection by restricting disclosure to the state's

23

registered voters. The District Court therefore got it right when it concluded, "Because South Carolina's statutes prevent compliance with the plain language mandates of the NVRA, they are preempted." (JA108); *see also ITCA*, 570 U.S. at 9 (explaining that where state law conflicts with Elections Clause legislation, "the state law, 'so far as the conflict extends, ceases to be operative.'") (quoting *Ex parte Siebold*, 100 U.S. 371, 384 (1880)).

The Registered Voter Requirement also conflicts with Congress's other objectives. With the NVRA, Congress intended, among other things, to "protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). It is well-settled in this Circuit that the Public Disclosure Provision is the means to accomplish these objectives.

For example, *Project Vote* explains, "It is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls." *Project Vote*, 682 F.3d at 339. By excluding the Foundation—and every other organization and unregistered person—from

24

viewing the Voter File, fewer errors will be discovered, and fewer errors will be fixed. In fact, that is precisely why the District of Maryland invalidated a Maryland law that similarly restricted access to the state's registered voters. *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d at 445. The Maryland Court prudently recognized that access bans pose "obstacle[s] to the accomplishment of the NVRA's purposes" because they "undermine[] Section 8(i)'s efficacy." *Id*. The same is true here.

The SEC's position would ironically prevent the victims in *Project Vote*—university students wrongly denied registration—from examining records related to their denial of registration. In other words, South Carolina could engage in deliberate or accidental denial of the right to vote, but the victims of the denial would be ineligible to utilize the NVRA to obtain facts related to their denial because they are not registered voters. The SEC's interpretation would thus help conceal racial discrimination in voting. That would be a preposterous outcome given the Congressional findings animating the NVRA's passage. 52 U.S.C. § 20501(a)(3) (finding

that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities").

Nor can the SEC's interpretation coexist with this Court's view that disclosure fosters "accountability." *Project Vote*, 682 F.3d at 339. Indeed, a transparent Voter List reveals whether officials acted effectively and lawfully. "Without such transparency, public confidence in the essential workings of democracy will suffer." *Id*. Simply put, without the Voter File, nobody can check the work of government officials.

There is no "significant objective" limitation on preemption, as the SEC believes. (*See* SEC Br. at 51.) The Supreme Court instructs that with Elections Clause legislation, the statute's text decides the preemption question, not a state's subjective view of significance. *ITCA*, 570 U.S. at 14 ("[T]he reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent."). Furthermore,

26

conflict preemption contains no such limitation. Instead, conflict preemption occurs where "the state law stands as an obstacle to the accomplishment and execution of *the full purposes and objectives of Congress*." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (citations and quotations omitted) (emphasis added). The Registered Voter Requirement is an obstacle to multiple, if not all, of the NVRA's goals.

Nor does a "significant objective" limitation even help the SEC because this Circuit has already decided that election transparency is paramount, admonishing other courts that might consider diminishing its importance. *Project Vote*, 682 F.3d at 339-40 ("Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections.").[8] There is no room for the SEC's contrary belief.

---

[8] The Supreme Court has described the NVRA's voter list maintenance requirements—the object of the transparency requirements— as a "main objective," *Husted v. Philip Randolf Inst.*, 584 U.S. 756, 761 (2018), lending additional support to this view.

## IV.    The Foundation Has Standing.

*Laufer v. Naranda Hotels*, LLC, 60 F.4th 156 (4th Cir. 2023) rejects the

SEC's late-arriving belief that *TransUnion LLC v. Ramirez*, 594 U.S. 413

(2021) changed the informational injury doctrine. (*See* SEC Br. at 13.)

"There was no statement or even suggestion in *TransUnion* that the Court

was reconsidering the earlier precedents. Rather, the *TransUnion* Court

distinguished *Public Citizen* and *Akins* without questioning their validity."

*Id*. at 170. Accordingly, "*TransUnion* most assuredly did not overrule

*Havens Realty*, *Public Citizen*, and *Akins*" and "those precedents must

continue to be followed where they are applicable, unless and until the

Supreme Court decides otherwise." *Id*. at 170-71.[9]

---

[9] Although *Laufer* was later dismissed as moot, the dismissal was
voluntary, which "leaves the court's decision in *Laufer v. Naranda Hotels,
LLC*, 60 F.4th 156 (4th Cir. 2023), undisturbed." *Laufer v. Naranda Hotels,
LLC*, No. 20-2348, 2023 U.S. App. LEXIS 19361, at *1 n.* (4th Cir. July 26,
2023).

28

## A. The Informational Injury Doctrine Applies.

The Informational Injury Doctrine is decades old. In *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 449 (1989), the Supreme Court explained that to establish standing in public-records cases, the plaintiff does not "need [to] show more than that they sought and were denied specific agency records." There, the plaintiff sought records pursuant to the Federal Advisory Committee Act ("FACA"). The Supreme Court held that FACA created a public right to information by requiring advisory committees to the executive branch of the federal government to make available to the public its minutes and records, with some exceptions. 491 U.S. at 446-47. The defendant asserted that the plaintiff did not "allege[] [an] injury sufficiently concrete and specific to confer standing." *Id*. at 448. The Supreme Court "reject[ed] these arguments." *Id*. at 449.

> As when an agency denies requests for information under the Freedom of Information Act, refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue.

29

*Id*. In other words, the inability to "scrutinize" the activities of government "constitutes a sufficiently distinct injury." *Id*. The Court reaffirmed *Public Citizen* in *FEC v. Akins*, 524 U.S. 11 (1998), explaining, "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id*. at 21.

Citing *Public Citizen* and *Akins*, the Eastern District of Virginia rejected a similar attack on standing under the NVRA, explaining that "[f]or a plaintiff to sufficiently allege an informational injury, it must first allege that the statute confers upon it an individual right to information, and then that the defendant caused a concrete injury to the plaintiff in violation of that right." *Project Vote*, 752 F. Supp. 2d at 702. The court first recognized that "the NVRA provides a public right to information," *id*. at 703, and then explained that where there is "no dispute that the plaintiff has been unable to obtain the [r]equested [r]ecords," "the plaintiff's alleged

30

informational injury is sufficient to survive a motion to dismiss for lack of standing," *id*. at 703-04.[10]

As in *Project Vote*, so here: there is no dispute that the Foundation is unable to obtain the Voter File. The Foundation therefore has standing under *Public Citizen* and *Akins*.

### B. *Laufer* Rejects the Need for "Downstream Consequences" in Cases Alleging Denial of Records.

*Laufer* forecloses the SEC's argument that Article III requires the Foundation to also demonstrate "sufficient downstream consequences flowing from its asserted informational injury." (SEC Br. at 13.) To the contrary, "*Havens Realty*, *Public Citizen*, and *Akins* are clear that a plaintiff need not show a use for the information being sought in order to establish

---

[10] *See also Pub. Interest Legal Found., Inc. v. Bennett*, No. 4:18-CV-00981, 2019 U.S. Dist. LEXIS 39723, at *8-*10 (S.D. Tex., Feb. 6, 2019) (denying motion to dismiss), *adopted by Pub. Interest Legal Found., Inc. v. Bennett*, No. 4:18-CV-00981, 2019 U.S. Dist. LEXIS 38686 (S.D. Tex., Mar. 11, 2019); *Jud. Watch, Inc. v. King*, 993 F.Supp.2d 919, 923 (S.D. Ind. 2012) (citing *Akins*, 524 U.S. at 24-25) ("As noted above, the Plaintiffs assert two distinct violations of the NVRA. With regard to the Records Claim, the Defendants do not—and cannot—assert that the Plaintiffs lack standing.").

an injury in fact in satisfaction of the first *Lujan* element." *Laufer*, 60 F.4th at 172. Why not? Because "the informational injuries in *Public Citizen* and *Akins* (the 'fail[ure] to receive *any* required information')" are distinguishable "from the purported informational injury [in *TransUnion*] (receipt of the required information '*in the wrong format*')." *Id*. at 170 (quoting *TransUnion*, 594 U.S. at 441 (first emphasis added)). Therefore, "any use requirement is limited to the type of informational injury at issue in *TransUnion* and does not extend to the type of informational injury presented in *Public Citizen* and *Akins*." *Id*. at 170.

This case presents the type of informational injury at issue in *Public Citizen* and *Akins*—the failure to receive *any* required information. Because the Foundation failed to receive the Voter File, the Foundation has suffered an actionable informational injury.[11]

---

[11] "[A]lthough the plaintiffs in *Public Citizen* and *Akins* thereafter asserted uses for the information they sought, those asserted uses were not a factor in the *Public Citizen* and *Akins* Article III standing analyses." *Laufer*, 60 F.4th at 170.

### C. In Any Event, the Foundation Has Been Deprived of Information *and* Suffered Downstream Consequences Contrary to the Intent of Congress.

The Foundation has nevertheless demonstrated downstream consequences caused by its informational injury. Among other things, the Foundation cannot "study and investigate South Carolina's voter list maintenance activities and South Carolina's compliance with state and federal law," (JA014 ¶ 29), because the SEC is denying access to the Voter List. The SEC's denial of the Foundation's request is a "refusal to permit [the Foundation] to scrutinize [South Carolina's] activities to the extent [NVRA] allows." *Public Citizen*, 491 U.S. at 499. The NVRA Public Disclosure Provision was designed to allow scrutiny of voter list maintenance activities, and therefore denying the Foundation the ability to "scrutinize" those activities in South Carolina "constitutes a sufficiently distinct injury to provide standing to sue." *Id*.

Furthermore, the Foundation is also facing impairment of (1) its educational and advising activities (*see, e.g.*, JA015 ¶ 33); (2) its institutional

33

knowledge, on which it depends for efficient and effective programming (*see, e.g.*, JA015 ¶ 34); and, (3) its resource allocation (*see, e.g.*, JA015 ¶ 31).[12]

If the SEC gets its way, not even the media will have standing to investigate the most egregious voting discrimination. It is no less absurd for the SEC to argue that the Foundation—a public interest organization dedicated to studying and improving voter list maintenance activities—does not have standing to compel production of records under a federal law designed to make voter list maintenance transparent. The SEC's view of standing effectively dismantles Congress's design for the NVRA.

Supreme Court and Circuit precedent instructs that government records should be public based on the peoples' *right* to know—not on their *need* to know. The Foundation was denied records federal law makes public. The Foundation therefore has standing.

---

[12] The SEC does not dispute *any* of the facts concerning the Foundation's mission, the Foundation's intended activities, or the Foundation's inability to engage in those activities. In other words, there are no material factual disputes, even if the SEC had raised standing arguments before the District Court.

### D. The SEC's Proxy Approach to Federal Rights is Repugnant to the Values of a Free Nation.

The SEC believes the Foundation has suffered no injury because it could ultimately obtain the same Voter List from an authorized purchaser who is entitled to ask for it. (*See* SEC Br. at 29.) By that logic, a "Whites Only" restaurant causes no harm because racial minorities can ask a white friend to bring some food home for them. But it obviously does cause harm. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968); 377 F.2d 433, 434 (4th Cir. 1967) ("Plaintiffs appeal from the decision of the district court holding that Negro citizens may be barred on account of their race and color from buying and eating barbecue at certain drive-in restaurants in South Carolina. We disagree and reverse."). And so does the SEC's approach here because federal rights do not exist by proxy. They belong to everyone Congress gives them to. With the NVRA, Congress gave inspection rights to the "public."[13] 52 U.S.C. § 20507(i)(1).

---

[13] The District of Maryland prudently recognized that the ability to circumvent disclosure restrictions via straw-purchaser actually "reveal[s]

35

The "public" includes organizations, not just voters, as the SEC believes. (SEC Br. at 32.) The SEC declares "there is neither evidence nor legislative history demonstrating that Congress contemplated the fulfilment of [the NVRA's] purposes through an organization like the Foundation." (*Id*.) Except, there is.

> [A]n examination of the legislative history of the NVRA makes clear that Congress intended that organizations be able to sue under the Act. An earlier version of the Act allowed a private cause of action for an aggrieved "individual," but the later version that was passed into law used the term "person." In explaining the change, Senator Ford, a sponsor of the bill, noted that "the modification will permit organizations as well as individuals, and the Attorney General to bring suits under the act." 138 Cong. Rec. S6329 (daily ed. May 7, 1992) (statement of Sen. Ford).

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 364 (5th Cir. 1999).

## CONCLUSION

For these reasons, the judgment below should be affirmed.

---

the emptiness of th[e] rationale" upon which the restriction is allegedly based. *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d at 445.

36

Dated: May 5, 2025.

Respectfully submitted,

For the Plaintiff Public Interest Legal Foundation:


  /s/ Noel H. Johnson           
J. Christian Adams
Noel H. Johnson
PUBLIC INTEREST LEGAL FOUNDATION, INC.
107 S. West Street, Suite 700
Alexandria, VA 22314
(703) 745-5870
adams@publicinterestlegal.org
njohnson@publicinterestlegal.org

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 25-1128    **Caption:** Public Interest Legal Foundation, Inc. v. Knapp

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____5,809_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[ ] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14-point Palatino Linotype _____ [*identify font, size, and type style*];

**or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Noel H. Johnson _____

Party Name Appellee Public Interest Legal Fnd.    Date: 5/5/2025 _____

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, I electronically filed the

foregoing using the Court's ECF system, which will serve notice on all

parties.

 /s/ Noel H. Johnson
Noel H. Johnson
Counsel for Public Interest Legal Foundation